Marcus **CASBON**, Libellant,

v.

**STOCKARD STEAMSHIP CORPORATION**, Respondent.

No. 3544.

United States District Court
E. D. Louisiana,
New Orleans Division.
April 29, 1959.

Dodd, Hirsch, Barker & Meunier, Harold Lamy, New Orleans, La., for libellant.

Terriberry, Rault, Carroll, Martinez & Yancey Edward Bagley, New Orleans, La., for respondent.

Jones, Walker, Waschter, Poitevent, Carrere & Denegre, Pat F. Bass, New Orleans, La., for New Orleans Stevedoring Co., Inc., respondent-impleaded.

J. SKELLY WRIGHT, District Judge.

Alleging unseaworthiness, Casbon, an employee of a stevedoring contractor, seeks recovery from respondent shipowner for injuries sustained by him when a scaffold, from which he was building a fire wall in the lower hold of the S.S. Oberlin Victory, collapsed. Respondent shipowner first strongly argues that it is Casbon's statutory employer under § 4 of the Longshoremen's and Harbor Workers' Compensation Act[1] and that, consequently, that Act provides his exclusive remedy.[2] Alternatively, respondent suggests that the scaffold was built by Casbon and a co-employee and that it collapsed by reason of defective construction. Under those circumstances, it argues that there is no unseaworthiness and, therefore, no responsibility for Casbon's injuries. Respondent has also impleaded Casbon's employer, New Orleans Stevedoring Co., Inc., alleging a claim over in the event it is held responsible to Casbon for his injuries.

On December 27, 1957 Casbon was employed by New Orleans Stevedoring Co. as a carpenter. At the time of his injury, he was engaged in constructing a heat resisting bulkhead, or fire wall, in the No. 3 lower hold of the S.S. Oberlin Victory on the port side. The purpose of the fire wall was to protect the cargo of grain from hot pipes running along the steel bulkhead of the vessel. The fire wall was to be approximately 12 feet wide and 15 feet high. A load of sheet lumber and a supply of nails were provided by his employer for this purpose, pursuant to its contract with the respondent shipowner. The sheet lumber was rough, second-class 1″ x 10″ pine boards of varying length, many weakened by excessive knotting. Under the standard practice generally accepted in the stevedoring, as well as the marine, industry, the fire wall was to be built by nailing the boards, one above the other, along the bulkhead. When the firewall reached a height above which its builders could not conveniently reach, under the same generally accepted practice, these same second-class, knotted, pine boards were used in making a scaffold from which Casbon and his fellow employee could complete the fire wall up to its 15-foot height. It was while so doing that the scaffold collapsed, the two 1″ x 10″ boards, one on top the other forming its base, breaking in the middle.

In addition to its defense under the Longshoremen's and Harbor Workers' Compensation Act, respondent shipowner suggests that the scaffolding would not have collapsed had Casbon and his co-employee placed a support under the middle of the base of the scaffold. The shipowner also suggests that there were available in another part of the hold some 2″ x 10″ planks which could have been used by Casbon and his fellow employee in building the scaffold. As to this latter suggestion, it appears that the 2″ x 10″ planks in the hold were for use in making a shifting board for the grain cargo, and Casbon's coworker, Reynolds, attempted to obtain a piece of the 2″ x 10″ lumber to use as a platform for the scaffold. He was denied the use thereof by the foreman for the reason that it was not the practice to use 2 x 10's in building a scaffold and that in any event the 2 x 10's were necessary for use in building the shifting board. The evidence is clear from all the witnesses, including respondent's, that it was the accepted practice in the shipping industry for the longshore contractor to build a scaffold from the same lumber being used to build the fire wall and that respondent was, or should have been, aware of the practice.

1. 33 U.S.C.A. § 904.

2. 33 U.S.C.A. § 905.

■ Respondent's first defense, that is, that it was a statutory employer under the Longshoremen's and Harbor Workers' Compensation Act and that, as to it, the Act provided Casbon's exclusive remedy, may be quickly disposed of. Respondent shipowner and the impleaded stevedoring contractor, working in concert, jointly suggest that this defense is a new approach to shipowner-longshoremen relations and that it is in fact an answer to this vexing problem. This contention, however, is not new. It simply has been dead so long counsel are unaware it was ever made. This precise argument was made, considered and rejected in Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.[3] It should be laid back to rest for it provides no solution to the problem at hand. This problem must be dealt with upon a consideration of the warranty of seaworthiness as applied to the employee of a stevedoring contractor.

Despite much weeping and gnashing of teeth by interests adversely affected, the doctrine of liability without fault remains firmly embedded in the general maritime law. The extension of this doctrine, however, to cover an increasing circle of harbor workers has been arrested, at least temporarily.[4] Moreover, there remain undecided questions concerning the application of the doctrine to transitory unseaworthiness or unseaworthiness caused by operating negligence.[5] The answer to those questions may not be provided by the "humanitarian policy" which has thus far motivated the Supreme Court in extending the application of the doctrine "to all within the range."[6] Consequently, it is with some trepidation that a lower court proceeds in this possibly changing climate to adumbrate the correlative duties and rights of shipowner and worker in this new twilight zone.

■ It would seem certain, at least as of now, that the warranty of seaworthiness applies to those shore workers who perform duties on board the vessel traditionally performed by seamen. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Seas Shipping Co., Inc. v. Sieracki, supra. To these workers is owed the nondelegable duty to provide a reasonably safe place to work, as well as reasonably safe appliances with which to perform the work. Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. This duty cannot be contracted away by requiring the shoreside contractor to supply the men and the equipment,[7] nor can it be avoided by abandoning part of the vessel to such contractors.[8] In fact, the Second Circuit has held that this nondelegable duty persists even where an unseaworthy condition is created or contributed to by the claimant himself. Grillea v. United States, 2 Cir., 232 F.2d 919.

3. In Sieracki, 328 U.S. at page 101, 66 S. Ct. at page 880, the Court stated:

"* * * The argument is that by giving longshoremen the rights of compensation afforded by that Act against the employer and making them exclusive, Congress has withdrawn from them not only the protections gained by virtue of the Merchant Marine Act of 1920 [46 U.S. C.A. § 688] under the Haverty decision, but also all other protections relating to personal injury which otherwise might be available to them under the general maritime law. In other words, it is claimed that the remedies afforded by the Longshoremen's legislation are exclusive of all other remedies for injuries incurred aboard ship, whether against the employer or others.

"This view cannot be accepted. * * *"

4. See United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541.

5. See Mitchell v. Trawler Racer, Inc., 1 Cir., 1959, 265 F.2d 426; Grillea v. United States, 2 Cir., 232 F.2d 919; Dixon v. United States, 2 Cir., 219 F.2d 10.

6. Seas Shipping Co., Inc. v. Sieracki, supra, 328 U.S. at page 95, 66 S.Ct. at page 877.

7. Alaska Steamship Co., v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

8. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 427, 79 S.Ct. 445, 3 L.Ed.2d 413.

On the other hand, it has been held that unseaworthiness, which is transitory or is the result of operating negligence, is not covered by the warranty, even as to seamen.[9] In fact, one justice of the Supreme Court,[10] then a judge on the Second Circuit, has suggested that all The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, and her progeny stand for is that the absolute liability doctrine extends to conditions arising *before* the vessel has begun her voyage, and that the duty of the shipowner, after the vessel has broken ground from her home port, is limited to the use of due care to maintain the seaworthiness of the vessel. Whether this limitation on the absolute liability doctrine will prevail remains to be seen. In the meantime cases must be decided on the basis of the jurisprudence as it exists today.

The jurisprudence, in so far as applicable to the case at bar, may be quickly stated. Sieracki, supra, extended the warranty of seaworthiness to longshoremen. Mahnich, supra, applied it to the ship's appurtenances, and Alaska Steamship Co., Inc. v. Petterson, supra, applied it to the equipment brought on board the vessel by the stevedore. The question to be decided in this case then is: Was Casbon injured by reason of defective or inadequate lumber used by him and his coworker in building the scaffold from which he fell? The lumber, of course, was brought aboard by his employer and supplied to him for this purpose. That fact does not relieve the shipowner of liability. Alaska Steamship Co., Inc. v. Petterson, supra. However, the shipowner may be relieved from liability if it appears that the lumber was adequate for the purpose intended but broke because of the negligent manner in which the scaffold was constructed.[11] In that circumstance, unquestionably, the defective scaffold made the ship unseaworthy. But, was it the type of unseaworthiness covered by the doctrine of liability without fault? In other words, was it transitory unseaworthiness or unseaworthiness caused by operating negligence, and if so, is the shipowner responsible even where it appears, as is alleged here, that the plaintiff himself, and his fellow servant, were at least partially responsible for the defective construction?

Respondent's suggestion that it was the long-accepted practice in the industry to use second-class 1″ x 10″ sheeting to build a fire wall scaffold does not provide the answer as to its adequacy. Long-accepted practices are very often unsafe practices which are discontinued only after their character as such has been demonstrated by accidents. Here men, building a fire wall over twice their height, were provided with no equipment with which to reach above their heads. They were expected, under the long-accepted practice, to use the same nails and second-grade sheeting in fabricating the scaffold which they were using in constructing the wall. It would seem obvious that second-grade, knotted, one-inch, pine boards are not suitable as a platform for a scaffold, on the strength of which, the limbs, maybe the lives, of men depend. Certainly any vessel which offered its seamen such equipment from which to work would be unseaworthy. The obligation to this longshoreman is no less. This equipment, or lack of equipment, furnished by the stevedore, under the law is the responsibility of the shipowner. Where it is defective, as it was here, and where that defective condition was the proximate cause of the accident, as it was here, the shipowner is liable on its warranty of seaworthiness.

The legal responsibility of the respondent for the injuries suffered by

9. See Mitchell v. Trawler Racer, Inc., supra, and Dixon v. United States, supra.

10. Mr. Justice Harlan in Dixon v. United States, supra.

11. But see Grillea v. United States, supra. Compare Harrell v. Lykes Brothers S.S. Co., D.C., 165 F.Supp. 125.

Casbon is not limited to an application of the doctrine of liability without fault. As a business guest aboard the vessel, the shipowner owed Casbon the duty to use due care to furnish him a safe place to work. Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at page 413, 74 S.Ct. at page 207. Here there was lack of due care on the part of the shipowner in allowing this stevedoring contractor to build a scaffold on board its vessel of second-grade, knotted, pine sheeting. A shipowner may not abandon its ship nor its responsibility to such contractors. It may not delegate to such contractors its obligation and duty of due care to see that workmen on board are afforded a safe place to work. Its over-all responsibility is to make certain that unsafe practices are not indulged by shoreside contractors on board the vessel, even where those practices involve only the safety of the contractor's employees.

Thus, assuming that the unseaworthiness in suit was transitory, and not covered by the warranty, it was contributed to by the negligence of the shipowner itself. Thus, by allowing its stevedoring contractor to indulge in an unsafe practice, it has failed in its duty of due care. Moreover, this duty is nondelegable. Dixon v. United States, supra. So the obvious negligence of the longshore contractor, in supplying defective second-grade lumber for use as a scaffold, is in law the negligence of the respondent.

With reference to the claim over by respondent against the New Orleans Stevedoring Company, that claim must be recognized under the principle announced in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. The fact that fault on the part of the shipowner may have contributed to the injury in suit does not mitigate its claim over. It may recover in full on the stevedore's "warranty of workmanlike service." Crumady v. The Joachim Hendrik Fisser, supra, 358 U.S. at pages 428–429, 79 S.Ct. at page 448.

Decree accordingly.