**REDERI A/B DALEN, Respondent, Appellant,**

v.

**Walter C. MAHER, Impleaded Respondent, Appellee.**

**No. 8518.**

United States Court of Appeals Fourth Circuit.

Argued March 27, 1962.

Decided May 19, 1962.

Charles F. Tucker, Norfolk, Va. (Hugh S. Meredith, and Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.

Allan S. Reynolds, Norfolk, Va. (White, Ryan & Reynolds, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

A shipowner is here seeking indemnity from a stevedore for counsel fees incurred in defense of an action brought by the widow of a longshoreman killed in the loading of a cargo of coal.

On August 6, 1957, Jasper Deans, an employee of stevedore Walter C. Maher, went aboard the S.S. BELLINA to assist

in trimming a cargo of granular coal then being loaded into her lower hold. An initial load of coal had been dumped on the after end of the lower 'tween deck, partially filling the main hatch and completely covering the two trimming hatches located near the corners of the deck. Other trimmers in the lower hold had raked some coal from under the port trimming hatch, and, apparently because the coal at the opening had become impacted, a cavity was created under this trimming hatch. As Dean was making his way down to the lower hold, he stepped on the impacted coal covering the hatch. It gave way under his weight, and he was drawn, together with a substantial quantity of coal, through the opening and was suffocated before he could be dug out.

His widow filed a libel in rem against the ship, and in personam against the owner, Rederi A/B Dalen, based on the Virginia wrongful death statute, Code of Va. § 8–633 (1950). The libel charged that the longshoreman's death resulted from the unseaworthiness of the vessel and the negligence of her officers.[1] The shipowner, in turn, impleaded stevedore Maher as third party defendant, alleging that liability, if any, was due to Maher's failure to perform the loading operation in a workmanlike manner and claiming recovery over against him.

The case was fully tried by the court on May 11, 1960, and after several unavoidable delays was set for final argument on March 1, 1961. Final argument was never held, for on February 28, 1961, stevedore Maher paid the libellant the sum of $25,000 and costs, in full settlement. The following day, this agreement was ratified by the court and an order entered dismissing the original libel with prejudice. Controversy, however, continued between the shipowner and the stevedore. The former contended that, although its liability had not been adjudicated in the main action, it was entitled to recover the attorney's fees it had expended in defending the libel. This phase of the case ended on September 18, 1961, with the entry by the District Court of an order denying the shipowner's claim and dismissing the third party action. The appeal is from that order.

■ It is now well settled that the stevedore is obligated to indemnify the shipowner for any loss occurring as a result of the failure of the former to stow or discharge cargo in a workmanlike manner. See, e. g., Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Waterman S.S. Co. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). As explained by the Court in the Ryan case: "Competency and safety of stowage are inescapable elements of the service undertaken [by the stevedore]. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of [a stevedoring] contract." 350 U.S. at 133, 76 S.Ct. at 237. Thus the theory of the shipowner's recovery over is implied warranty and indemnity.

Equally clear is the shipowner's right to recover attorney's fees and other expenses of litigation as part of the indemnity.[2] The stevedore would have us hold

1. The Virginia statute authorizes recovery for the death of a longshoreman under the substantive principles of the maritime law. See Holley v. The Manfred Stansfield, 269 F.2d 317 (4th Cir. 1959).

2. See, e. g., Paliaga v. Luckenbach S.S. Co., 301 F.2d 403 (2d Cir. 1962); Holley v. The Manfred Stansfield, 186 F.Supp. 805, 809–812 (E.D.Va.1960); Lilleberg v. Pacific Far East Line, Inc., 167 F.Supp.

3 (N.D.Cal.1958); cf. A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227, 232 (2d Cir. 1958); Shannon v. United States, 235 F.2d 457 (2d Cir. 1956). Indeed, under the general law, an indemnitee has traditionally been permitted to recover reasonable counsel fees from his indemnitor as part of the damages. See 27 Am.Jur., Indemnity § 27, pp. 473–74.

that the shipowner is entitled to no indemnity in the present case because no judgment has been entered against the shipowner. But the argument overemphasizes the importance of a formal judgment. In Waterman S.S. Co. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960), the Court authorized an award of indemnity even though a longshoreman's claim had not been reduced to final judgment. True, in the Waterman case, no judgment was entered because the shipowner had settled the claim, while in the present case the stevedore himself made the settlement; but this distinction would not require a different result here under the applicable legal principles. In a situation identical with ours, the Second Circuit recently said: "By settling directly with the plaintiff the stevedore may not circumvent its contractual obligation to indemnify the shipowner for any loss incurred by the shipowner caused by the stevedore's failure to use proper care." Paliaga v. Luckenbach S.S. Co., 301 F.2d 403 (2d Cir. 1962).

■ We hold that the District Court erred in treating an adjudication of liability as a basic prerequisite to the shipowner's claim of indemnity.[3] If a shipowner can show that the stevedore's breach of warranty has occasioned it expense, reimbursement is due. Of course, the shipowner must prove that the stevedore, in fact, breached its warranty and caused injury for which the shipowner was potentially liable and that the expenses incurred in defense are reasonable. The termination of the original libel presents no problem, for the shipowner may press its third party complaint even though the main action is settled and dismissed.[4]

Here, because of the view taken by the District Court, there has been no adjudication of the stevedore's breach of warranty or the amount of the shipowner's damages. Therefore, the case will be remanded for determination of these issues.

Reversed and remanded.

---

3. In the present case, there was no offer by the stevedore to take over the defense of the litigation. Had this been done, we might well have a different case, but we do not now pass on the question.

4. See Waterman S.S. Co. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 200 (1960); Paliaga v. Luckenbach S.S. Co., 301 F.2d 403 (2d Cir. 1962).