**AMERICAN EXPORT LINES, Owner pro hac vice of the S.S. EXMOUTH,**
Appellee,

v.

**NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION, Appellant.**

No. 9364.

United States Court of Appeals
Fourth Circuit.

Argued June 23, 1964.

Decided Aug. 20, 1964.

L. S. Parsons, Jr., Norfolk, Va. (Parsons, Stant & Parsons, Norfolk, Va., on brief), for appellant.

Harry E. McCoy, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and HEMPHILL, District Judge.

SOBELOFF, Chief Judge.

This litigation began when Herbert J. Bielawski, an employee of Norfolk Shipbuilding & Drydock Corporation, sued American Export Lines, the owner *pro hac vice* of SS EXMOUTH, for injuries sustained aboard that vessel. The ship requested the shipyard to defend the suit, but the latter declined to do so. The ship then filed a third-party complaint. After the jury absolved the ship of all liability and held the shipyard solely responsible for Bielawski's injuries, the ship sought indemnity from the yard for legal expenses incurred in the successful defense of the suit. It is from the District Court's award of indemnity that the shipyard now appeals.

Bielawski's complaint alleged that American Export "managed, operated and controlled" the vessel at all material times, that Bielawski was employed by Norfolk "in the capacity of a rigger in connection with certain work being undertaken upon said vessel on navigable waters" and that "in the usual course of business [he] was working on the ship's forward mast house guiding a certain cargo boom to its cradle when he was struck in the back and was catapulted into the vessel's No. 2 hold, thereby receiving extensive, permanent and painful injuries." The complaint charged that American Export was liable because of negligence or because of the unseaworthiness of the vessel. The ship owner's answer denied negligence and claimed that the SS EXMOUTH was a "dead ship" and therefore not subject to the warranty of seaworthiness. Because the jury found the shipyard solely responsible, it never decided the "dead ship" question.

■■ It is now settled that when a stevedore enters into a service agreement with a ship, there is an implied contractual warranty on the part of the stevedore to perform in a workmanlike manner. Italia Soc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L. Ed.2d 732 (1964); Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563, 78 S. Ct. 438, 2 L.Ed.2d 491 (1958); Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). While there is no direct authority holding the same warranty applicable in a shipyard-ship contract there is no sound reason to say that it is not. Cf. West v. United States, 361 U.S. 118, 80 S. Ct. 189, 4 L.Ed.2d 161 (1959). Especially is this so in the present case where the Invitation to Bid expressly required the shipyard "to carry out all work specified herein in a *thoroughly efficient manner*, and to the entire satisfaction of the representatives for the American Export Lines and the United States Maritime Administration." (Emphasis added.)

■■ When a stevedore's breach of warranty imposes liability upon the ship, the ship is entitled to indemnity from the stevedore for losses, and the right to indemnity includes expenses of litigation. Nicroli v. Den Norske Afrika, 332 F.2d 651 (2nd Cir. 1964). An actual judgment of liability however is not required. Paliaga v. Luckenbach Steamship Co., 301 F.2d 403 (2nd Cir. 1962). Thus, if a ship reasonably settles a longshoreman's suit, it still has a right to indemnity from the stevedore. This court has

stated the indemnity rule in ship cases as follows:

> "If a shipowner can show that the stevedore's breach of warranty has occasioned it expense, reimbursement is due. Of course, the shipowner must prove that the stevedore, in fact, breached its warranty and caused injury for which the shipowner was potentially liable and that the expenses incurred in defense are reasonable." Rederi A/B Dalen v. Maher, 303 F.2d 565, 567 (4th Cir. 1962).

The jury having found the shipyard solely at fault for Bielawski's injuries, it is clear that American Export has sustained its burden to prove the shipyard's breach of warranty. It is equally clear that the expenses incurred by the ship in defense of the suit were occasioned by this breach. The only question then is whether the shipyard's breach exposed the ship to "potential" liability.

The shipyard contends that it alone was responsible for its negligence and that it was impossible for the ship to have been held liable because the ship was "dead." American Export Lines, Inc. v. Atlantic & Gulf Stevedores, Inc., 313 F. 2d 414 (4th Cir. 1963). Now that the entire record is before us it does appear that the ship was "dead." Noel v. Isbrandtsen Co., 287 F.2d 783 (4th Cir. 1961). This does not mean, however, that there was no potential liability, for that issue is to be resolved by us not by an examination of testimony adduced at the trial but by an examination for the situation as it existed when Bielawski's suit was begun.

██ Whether a ship is live or dead depends upon its status at the time of the accident, and this is a question of fact. Roper v. United States, 368 U.S. 20, 82 S. Ct. 5, 7 L.Ed.2d 1 (1961); West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L. Ed.2d 161 (1959). The SS EXMOUTH was in active service carrying cargo until it was brought to the shipyard on January 25, 1961, for both voyage repairs and deactivation. It is known now, after the trial, that when the injury occurred on January 31, the voyage repairs had just been completed. But when the ship was served with the complaint it could not in justice to itself or its indemnitor decline to defend. That there was no liability had to be demonstrated in a trial of the issues raised. Certainly no lawyer could have guaranteed a successful defense. On the face of the pleadings a claim for liability was asserted.

If the ship's counsel had been less diligent and a judgment had resulted, unquestionably the ship would have been entitled to indemnity. The ship should not be penalized for its success. A rule denying indemnity where a ship successfully defends would only "place a premium on losing lawsuits," Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir. 1964), and would encourage half-hearted efforts on the part of ships' counsel. Moreover, such a rule might in the long run be more expensive to indemnitors than the rule we lay down here. Possibly if there were a divergence of interest between the ship and the yard, a different rule might be appropriate, but here the interests of the ship and the yard to defeat the plaintiff's claim were identical. Conceivably, a plaintiff's claim may be so farfetched and palpably devoid of substance as to furnish no basis for invoking an obligation of indemnity. We are dealing here with no such extreme case. We hold that in the circumstances of this case indemnity for legal fees is proper. Massa v. C.A. Venezuelan Navigacion, supra; Strachan Shipping Co. v. Koninklyke Nederlandsche S.M., N.V., 324 F.2d 746 (5th Cir. 1963).

██ In addition to the expenses of defending against the plaintiff, the ship also seeks an award for the legal fees incurred in defending this appeal. The latter claim we deny, for in this regard the ship is in the same position as any other appellee who presents a justifiable case on appeal. Nicroli v. Den Norske Afrika, 332 F.2d 651 (2d Cir. 1964). The usual court costs of the appeal, however, will be taxed against the shipyard.

Affirmed.