George LUSICH, Appellant,

v.

BLOOMFIELD STEAMSHIP COMPANY
et al., Appellees.

BLOOMFIELD STEAMSHIP COMPANY,
Appellant,

v.

BOLAND MACHINE AND MANUFAC-
TURING CO., Inc., Appellee.

No. 21677.

United States Court of Appeals
Fifth Circuit.

Jan. 24, 1966.

Rehearing Denied March 23, 1966.

Marvin C. Grodsky, New Orleans, La., for appellant.

Christopher Tompkins, Charles E. Lugenbuhl, N. B. Barkley, Jr., New Orleans, La., for appellees.

Before JONES and WISDOM, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge:

Lusich, an employee of Boland Machine & Manufacturing Co., Inc., a shore side ship repair contractor, brought this maritime tort action for damages for personal injuries sustained while on board the SS LUCILLE BLOOMFIELD for his employer under a contract to make certain repairs on the starboard settling tank and the port boiler. He sought to recover upon the theories that his injuries were proximately caused by the negligence of the shipowner, Bloomfield Steamship Company, and by the unseaworthiness of the vessel.

Bloomfield denied responsibility for Lusich's injuries. It also filed a third-party complaint against Boland alleging breach of the contractor's implied warranty of workmanlike service, and praying for indemnity or contribution in the event of an award of damages to Lusich, and for recovery of attorneys' fees and expenses incurred in the defense of the case, regardless of the outcome of Lusich's action.

The main questions arise out of the court's actions in taking the negligence theory away from the jury, and in not holding Boland liable as a matter of law on the third-party claim.

Lusich, a welder, was hurt when he fell through an access hole in the inner floor of the starboard settling tank to the bottom of the tank some distance below. Boland had sent him and two of its other employees on the vessel in connection with the repairs required under its contract, which included the welding of a plate over a crack in the outside wall of the tank to stop an oil leak. The settling tank was used for storage of oil before it was pumped to the boiler burners. The

access holes in the inner floor were necessary to allow the settlement of sediment in the oil and to provide a means for getting into the lower part of the tank for cleaning and repair. The only entrance to the tank was through a manhole in its top, and the inside of the tank was dark. Permanent lighting fixtures and outlets on the inside were prohibited, and light for inspection and repair was available only through extension cords and other portable means from the outside. Boland's general foreman and its "pusher" went into the tank after it had been drained, cleaned and gas freed, and Lusich followed them. The only light among them was on an extension cord in the hands of the foreman. It was adequate for him, but did not light the area to the rear of him. There were no covers over the access holes, and Lusich had not been warned of their presence. He had not been in a settling tank before and knew nothing about their inner construction.

Lusich alleged that the shipowner was negligent in failing to furnish him a safe place to work, to warn him of the presence of the holes, and to provide adequate safety devices. The shipowner claimed that the contractor was solely responsible for any negligence charged because, under the repair arrangement, it had complete control of the area of the ship where the repairs were being made.

The trial court instructed a verdict against Lusich on his negligence theory on the ground that under the principle announced in West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), the shipowner had relieved itself of responsibility for the negligence alleged by surrendering complete control of the specific area of the repairs to the independent contractor. The court overruled Bloomfield's motions for instructed verdict and for judgment notwithstanding the verdict, each based upon the contention that Boland was liable to it as a matter of law for the attorneys' fees and expenses of litigation prayed for in its third-party complaint, and, in the alternative, for a new trial on that action. It is the actions of the court on some of those motions that give rise to the complaints on which this case must be reversed.

The court submitted the case to the jury on general instructions and ten special interrogatories including the questions of whether Lusich's injuries were proximately caused by unseaworthiness of the vessel, whether Boland failed to perform its contract in a reasonably safe, proper and workmanlike manner, whether Lusich was contributorily negligent, and of what amount of damages, if any, was suffered by him. The jury found that the SS LUCILLE BLOOMFIELD was not unseaworthy; that there was no failure on the part of Boland to perform its contractual duties in a workmanlike manner; and that the amount of Lusich's damages was "None". Under the court's instructions, the jury should not have answered several of the interrogatories that it did actually answer, including the one on damages, in the event of a finding unfavorable to Lusich on the first interrogatory about unseaworthiness.

Judgment was entered denying the respective recoveries sought by Lusich on his original action and by Bloomfield on its third-party complaint. Lusich and Bloomfield each prosecuted a separate appeal from the portion of the judgment adverse to him or it.

■■ We are of the opinion that the withdrawal of the negligence theory from the jury was reversible error. The evidence raised a jury issue as to whether the shipowner was negligent, and it was not relieved of responsibility therefor by the arrangement with the repair contractor under the facts in this case.

■ It is well settled that a shipowner which has entered into a contract requiring the presence of employees of an independent contractor aboard its vessel to perform functions essential to maritime service owes those workers the nondelegable duty to provide a reasonably

safe place to work.[1] In the *Casbon* case, cited in footnote 1, Judge Skelly Wright, giving Mahnick and Petterson as his authorities, summarized this responsibility as follows:

" * * * To these workers is owed the nondelegable duty to provide a reasonably safe place to work, as well as reasonably safe appliances with which to perform the work. Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. This duty cannot be contracted away by requiring the shoreside contractor to supply the men and the equipment (citing Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798), nor can it be avoided by abandoning part of the vessel to such contractors. * * * "

In West v. United States, supra, relied upon by the trial judge in taking the negligence theory from the jury, the Supreme Court refused to impose upon the shipowner the duty of providing the employee of an independent contractor a safe place to work, when it applied the following test to the facts before it:

" * * * It would appear that the focus should be upon the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done, rather than the specific type of work that each of the numerous shore-based workmen is doing on shipboard at the moment of injury." 361 U.S., at 122, 80 S.Ct., at 192.

West, an employee of a shore based independent ship repair contractor, was injured in 1951 while working in connection with the overhaul of a World War II "Liberty" ship at the contractor's docks in Philadelphia. It had been towed there from Norfolk, Virginia, where it had been "in the moth-ball fleet" in total deactivation for several years, with its pipes, boilers and tanks completely drained, and an oil preservative injected through them to prevent rusting. The work to be done was a complete overhaul to restore the ship to seaworthiness, and was characterized by the Supreme Court as being "equivalent to home port structural repairs." The only personnel of the shipowner on the vessel during the job were there for the purpose of inspecting the work as it progressed to insure compliance with the contract. Full control of the entire ship was in the hands of the contractor during the course of the job, and the vessel was not in maritime service in any sense at the time of West's injury.

The application of the test above stated to the facts of the present case brings about an entirely different result from that in West. Here, the SS LUCILLE BLOOMFIELD was moored at a dock in the Mississippi River at the Port of New Orleans for the purpose of discharging cargo at the army base there. The repairs Boland had contracted to make were admittedly minor in nature and expense.[2] They were completed the same day they were actually started, and cost only $311.72. They did not interfere with the purpose for which the ship was docked, and cargo was worked during the entire time they were being made. If there was any surrender of control, it

---

1. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed.2d 1099 (1946); Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 143 (1953); Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954); Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 413 (1959); Casbon v. Stockard S.S. Corp., D.C.La., 173 F.Supp. 845, 848 (1959).

2. Bloomfield's Vice-President testified:
 "Q. Well, how do you characterize this job?
 "A. This job was minor.
 "Q. A minor job?
 "A. Yes, sir.
 "Q. Actually, all that had to be done was to weld the piece of steel in—
 "A. Onto the other piece of steel.
 "Q. —onto the bulkhead, is that correct.
 "A. That is correct. From the inside, you see."

was of only a small area of the ship for a short period of time.

The distinction between this type of case and the situation in the West case was expressly recognized by the Supreme Court when it said:

"On the other hand, the vessels involved in the cases depended upon by petitioner were, at the times of the injuries, in the hands and under the control of the owners or charterers, and, instead of undergoing general repairs, were in active maritime service in the course of loading or unloading cargo pursuant to voyages. * * *" West v. United States, 361 U.S., at 121, 80 S.Ct., at 192, 4 L.Ed.2d, at 164.

■ Bloomfield contends that even if it was error to direct a verdict against Lusich on the negligence theory, it was not reversible because negligence was included in the unseaworthiness theory submitted to the jury. The answer to this argument is found in Pope & Talbot v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 207, 98 L.Ed. 143, 153, where the Supreme Court said:

" * * * The fact that Sieracki upheld the right of workers like Hawn to recover for unseaworthiness does not justify an argument that the Court thereby blotted out their long-recognized right to recover in admiralty for negligence. Neither the holding nor what was said in Sieracki could support such a contention. In fact, the dissent in Sieracki appears to have been predicated on an objection to adding unseaworthiness to the existing right to recover for negligence. It would be strange indeed to hold now that a decision which over the dissent recognized unseaworthiness as an additional right of persons injured on shipboard had unwittingly deprived them of all right to maintain actions for negligence."

While it has been accepted that unseaworthiness and negligence overlap to a great extent in this kind of cases, they are recognized as independent grounds of recovery; and a party relying upon both of them as support for his claim has a right to an independent submission of the negligence theory to the jury. Prudential Ins. Co. of America v. Morrow, 5 Cir., 1965, 339 F.2d 411. Otherwise, such a party's right of action based on negligence could always be "blotted out" by charging the jury only on unseaworthiness. Weyerhaeuser v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), is an example of a recent case where the plaintiff recovered on the theory of negligence when the jury found against him on the issue of seaworthiness.

Without any intention of detracting from what has been said about Lusich's right to an independent submission of each of the theories, we observe that the charge to the jury in this case was such that it could not be said the error in failing to submit the negligence theory was harmless. While the jury was instructed in general terms in connection with the issue of unseaworthiness that it was immaterial whether the owner was negligent, they had been specifically charged just before the arguments began that there could be no negligence on the part of the owner. Near the conclusion of the charge, and after the instructions on the theory of unseaworthiness, the jury was again told that "no negligence has been shown by the plaintiff against the Bloomfield Steamship Company, the owner," and that "as far as Bloomfield was concerned, no responsibility of lack of safety in the place to work would be imputed to them for the reason that the repair of the ship was in the hands of Boland." That portion of the charge concluded with the statement that the Court felt that, "it wouldn't be fair to assess to the steamship owner responsibility for an area which the repairman had undertaken to care over at that particular time and make the repairs that were requested." If these instructions did not completely nullify the charge that Bloomfield says permitted the jury to consider negligence of the owner in connection

with the issue of unseaworthiness, they created such a serious conflict that it is difficult to see how the jury could understand that it was free to consider whether there was any such negligence.

Lusich complains of the court's refusal to sustain his challenges of certain members of the jury panel for cause on the ground that they were general agents for the same type of casualty insurance companies as was defending this case. None of the challenged jurors was connected in any way with the insurance company involved in this suit, and each one of them said in effect that his business affiliations would not influence him one way or the other if he became a juror. The mere fact alone that a member of the jury panel is in the same business as that of one of the litigants, whether he be an insurance agent, a saddlemaker, cowpuncher, sheepherder, goatroper or something else, does not make him subject to challenge for cause. The trial court necessarily has some discretion in determining whether any matter is calculated to affect the fairness and impartiality of prospective jurors, and there was no abuse of that discretion in overruling the challenges for cause here. 50 C.J.S., Juries § 226 p. 972; Anderson v. Todd Shipyard Corp., D.C.N.Y., 63 F.Supp. 229 (1945); United States v. Sferas, 7 Cir., 210 F.2d 69 (1954), cert. den. 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086.

On its separate appeal, the shipowner contends that it was established as a matter of law that the contractor breached its warranty of workmanlike service in a reasonably safe manner in two particulars: (a) Lusich was guilty of negligence in not obtaining a light for his own use to take into the tank with him; (b) the contractor failed to furnish workmen reasonably fit to perform the services to which they were assigned because Lusich had never been in a settling tank before. The shipowner says that each of such breaches entitled it to recover the attorneys' fees and expenses incurred by it in defending Lusich's claim, and that the trial court therefore erred in overruling those portions of its motions for instructed verdict and for judgment notwithstanding the verdict relating to its third-party action. In the alternative, the shipowner says that the trial court erred in not granting it a new trial on its third-party complaint, and now asks that the portion of the judgment dealing with that phase of the case be reversed and remanded for a full trial *de novo* as "contingent protection in the unlikely event Mr. Lusich is granted a new trial." [3]

The contractor's position is that the shipowner was not entitled to judgment as a matter of law; that the jury finding that it had not failed to perform its contract in a reasonably safe, proper and workmanlike manner entitled it to a judgment; and that it could not be responsible under any circumstances in the indemnity action for the negligence of Lusich, even though he was its employee, under Drewery v. Daspit Bros. Marine Divers, Inc., 5 Cir., 317 F.2d 425 (1963).

Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the landmark case in this type of indemnity actions, held that even in the absence of an express agreement of indemnity, a stevedoring contractor entering into a service agreement with a shipowner was obligated to reimburse the shipowner for foreseeable damages resulting from the contractor's failure to perform its services in a workmanlike manner and with reasonable safety. The Court said that the obligation of indemnity arose out of an implied warranty that the contractual services would be performed in a reasonably safe and workmanlike manner, and not out of any tort theory; [4] and that since the indemnity action was for breach

3. Brief of Bloomfield, Appellant, p. 2.

4. " * * * The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." 350 U.S., at 134, 76 S.Ct., at 237, 100 L.Ed., at 142.

of contract, the principles dealing with comparative or qualitative proportions of fault and defenses common to claims for contribution from a joint tortfeasor or to other tort actions were not involved.[5]

 It was to be expected that, due to the varied and complex nature of services contracted to be done by shore based contractors on ships, many questions as to the scope and application of the Ryan rule were left in doubt. Later decisions deciding many of those questions have liberally construed the rule in favor of the shipowner.[6] Insofar as those matters are material to this case, it is now accepted that: (1) The rule applies to contracts for ship services other than stevedoring, including agreements to make ship repairs.[7] (2) While the right of indemnity for breach of the implied warranty covers damages resulting from negligence of the contractor, it encompasses much more.[8] (3) The foreseeable damages recoverable for breach of warranty include reasonable attorneys' fees and expenses incurred in defending, successfully or unsuccessfully, the injured party's action for damages.[9] (4) Such recoverable attorneys' fees and expenses are limited to those incurred in defense of the injured party's claim for damages, and do not include those for prosecuting the shipowner's claim for indemnity, either in the trial court or on appeal.[10] (5) The burden of proof is on the shipowner to establish the elements of its action for indemnity.[11]

5. " * * * (I)n the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as of 'primary' or 'secondary' negligence is inappropriate. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co., supra [350 U.S. at pages 132–133, 76 S.Ct. at pages 236–237]." Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 568, 78 S.Ct. 438, 2 L.Ed.2d 491, 495 (1958). See also Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, 320, 84 S.Ct. 748, 11 L.Ed.2d 732, 738 (1964).

6. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., supra; Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Waterman S.S. Corp. v. Dugan & McNamara, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Italia Societa v. Oregon Stevedoring Co., supra; Paliaga v. Luckenbach S.S. Co., 2 Cir., 301 F.2d 403 (1960); Booth S. S. Co. v. Meier & Oelhaf Co., 2 Cir., 262 F.2d 310 (1958); Grace Lines, Inc. v. Port Everglades Terminal Co., 5 Cir., 324 F.2d 699 (1963); American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 4 Cir., 336 F.2d 525 (1964). See also cases cited in Annotation, 7 L. Ed.2d 1070 (1962), and Weinstock, The Employer's Duty to Indemnify Shipowners for Damages Recovered by Harbor Workers, 103 U. of Pa.L.Rev. (1954).

7. Booth S. S. Co. v. Meier & Oelhaf Co., 2 Cir., 262 F.2d 310 (1958).

8. " * * * This undertaking is the stevedore's 'warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product,' 350 U.S., at 133–134 [76 S.Ct. 232, at 237, 100 L.Ed., at 142], a warranty generally deemed to cover defects not attributable to a manufacturer's negligence. * * *" Italia Societa v. Oregon Stevedoring Co., supra, 376 U.S., at 318, 84 S.Ct., at 751, 11 L.Ed.2d, at 737. See also Crumady v. J. H. Fisser, supra; Booth S. S. Co. v. Meier & Oelhaf Co., supra; and Drago v. A/S Inger, E.D.N.Y., 194 F.Supp. 398 (1951), where the Court said at page 403 that while negligence is generally involved in breach of the stevedore's warranty, a finding of no negligence is "not necessarily * * * determinative because breach of warranty is a broader term than negligence."

9. Paliaga v. Luckenbach S. S. Co., 2 Cir., 301 F.2d 403 (1962), Rederi A/B Dalen v. Maher, 4 Cir., 303 F.2d 565 (1962); Strachen Shipping Co. v. Koninklyke Nederlandsche S. M., N.W., 5 Cir., 324 F.2d 746 (1963), affirming Caswell v. Koninklyke Nederlandsche Stoomboot Maalschappy, N. V., D.C., 223 F.Supp. 102; Nicroli v. Den Norske Afrika, 2 Cir., 332 F.2d 651 (1964); American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 4 Cir., 336 F.2d 525.

10. See cases cited in footnote 9.

11. Damanti v. A/S Inger, 2 Cir., 314 F.2d 395 (1963), cert. denied 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64; American Export Lines v. Norfolk Shipbuilding & Drydock Corp., supra; and Rederi A/B Dalen v. Maher, supra, where the Court said: " * * * Of course, the shipowner must prove that the stevedore, in fact, breached its warranty and caused injury for which

The questions as to whether, as a matter of law, Lusich was negligent and the contractor failed to furnish employees reasonably fit to do their work are not close enough to require a detailed discussion. Lusich had no knowledge of the existence of any hazards in the floor of the settling tank. The question of whether he exercised ordinary care in relying on the light in the hands of his fellow employee who had entered the tank just ahead of him, instead of procuring a light for his own individual use, could have been decided either way. Suffice it to say on the other issue that the competence of Lusich to do the actual work he was sent on the ship to do was not questioned. The fact that he had never been in a settling tank before was only a circumstance to be considered in connection with all the other pertinent facts in deciding his fitness for his work on the ship. When the evidence here is viewed from the standpoint most favorable to the party opposing the motions, as must be done, both these matters are issues of fact to be decided from all the evidence material to them, rather than from isolated circumstances. Trenkle v. Compagnie Generale Transatlantique, D.C. S.D.Cal., 179 F.Supp. 795 (1960).

The shipowner was not entitled to judgment on its third-party action as a matter of law, but it should be granted a new trial so that the question of indemnity may be settled after the issues dealing with the plaintiff's claim have been determined. The Supreme Court said in the *Weyerhaeuser* case, supra, that in cases of this kind, "all fact issues involved in the third-party action should have been submitted to the jury after the verdict in the main case." 355 U.S., at 568, 78 S.Ct., at 441, 2 L.Ed.2d, at 494. This Court, in discussing this aspect of the *Weyerhaeuser* case, said in Grace Lines, Inc. v. Port Everglades Terminal Co., 324 F.2d 699, 701 (1963): " * * * Moreover, it held that the shipowner was

entitled to a jury trial, under appropriate instructions, of disputed factual issues on its claim for indemnity against the contractor, after the verdict in the main case. This is required because the liability of the contractor depends on principles different from those governing liability of the shipowner. * * * "[12] The reason for this rule is even more apparent when one considers the confusion likely to result from an attempt to apply in one deliberative session the different burdens of proof to the same state of facts resulting from the burden being on the plaintiff on his claim and on the shipowner on the third-party action.

In view of another trial, it is necessary to determine whether the *Drewery* case makes the question of Lusich's negligence immaterial on the issue of breach of implied warranty. We are of the opinion that it does not do so for the reasons that follow.

Drewery was a professional diver in the employment of Daspit Bros. Marine Divers, Inc. Daspit entered into a contract with Shell Oil Company to locate a severed underwater oil line in the Gulf of Mexico. The agreement contained an express provision for indemnity which is quoted in the opinion. Drewery sued Daspit under the Jones Act and Shell in maritime tort for injuries received during diving operations under the contract. The suits were consolidated and resulted in a verdict that Daspit was not negligent, and that the injury was caused by the combined negligence of both Drewery and Shell, with Drewery's negligence contributing 80% and Shell's 20%. Drewery was given judgment for 20% of his damages. The third-party action for indemnity was decided in favor of Shell after the jury had determined the issues in the main case. Daspit appealed on the ground that the negligence of its injured employee could not make it liable for reimbursement under the indemnity terms of the contract, and that conten-

---

the shipowner was potentially liable and that the expenses incurred in defense are reasonable. * * * " 303 F.2d, at 567.

12. See also Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S., at 134, 76 S.Ct., at 232, 100 L.Ed., at 142.

tion was upheld. The Court, after commenting on the dearth of authorities and treatise discussion on the subject, proceeded to say:

"We therefore approach the question as one of first impression. And we do so *in the narrow range of the indemnity contract and the special finding allocating causative negligence as between Shell and Daspit's injured employee. * * * "* (Emphasis added). 317 F.2d, at 427.

It is unnecessary to discuss the feature of allocation of negligence which resulted in Shell's being credited with a full deduction for Drewery's negligence, so that it was in fact seeking indemnity for that portion of the damages attributable only to its own fault. The *Drewery* case is distinguishable from this one on the ground that Shell's action for indemnity was predicated entirely upon the express terms of a written contract. There was no claim based upon implied warranty. This Court construed the express terms of that particular contract as being inadequate to make Daspit responsible in the indemnity action for the negligence of Drewery.. In this connection, the Court said:

"Furthermore, *we are construing a contract* and it would be drastic indeed to extend the doctrine in the suggested manner to impose liability not clearly spelled out in the contract, as it is not. * * * This is especially so where the end contended for was not a part of the subsisting law when the contract was made. * * * "* (Emphasis added). 317 F.2d, at 428.

No problem of "the narrow range" of a written indemnity contract is involved in this action based solely upon breach of implied warranty under the Ryan doctrine. The only authorities directly in point on the question involved in this type of action hold that the negligence of the contractor's injured employee who later sues for damages is a factor to be taken into consideration on the issue of breach of the contractor's

implied warranty. Damanti v. A/S Inger, 2 Cir., 314 F.2d 395 (1963), cert. denied 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed. 2d 64; Nicroli v. Den Norske Afrika, 2 Cir., 332 F.2d 651 (1964). On another trial, Lusich's conduct will be considered accordingly.

 The questions growing out of the refusal of requested special charges cannot be considered because no such charges appear in the record on this appeal.

The judgment is reversed and the case is remanded for a new trial.