The **DOW CHEMICAL COMPANY**, Libelant-Appellee and Cross Appellant,

v.

The **BARGE UM–23B**, its tackle, apparel, etc., and the **BARGE BC–598**, its tackle, apparel, etc., in rem, and Bartlett & Company, Missouri River Barge Lines, Inc., Cargo Carriers, Inc., Upper Mississippi Towing Corporation, and Two Twenty-Eight Terminal Services, Inc., in personam, Respondents-Respondents Impleader-Cross Appellees.

**CARGO CARRIERS, INC.**, Respondent-Third Party Plaintiff-Appellant,

v.

**TWO TWENTY–EIGHT TERMINAL SERVICES, INC.**, and Insurance Company of North America, Third Party Defendants-Appellants-Cross Appellees.

No. 27330.

United States Court of Appeals,
Fifth Circuit.

April 13, 1970.

Ben W. Lightfoot, Wallace A. Hunter, Baton Rouge, La., for Two Twenty-Eight Terminal Services, Inc.

Tom F. Phillips, Baton Rouge, La., for Cargo Carriers, Inc.

Neal D. Hobson, New Orleans, La., for Dow Chem. Co.

J. Barbee Winston, James H. Roussel, New Orleans, La., for Bartlett & Co., and Missouri River Barge Lines, Inc.

Margot Mazeau, New Orleans, La., for Dorr Towing.

J. Y. Gilmore, Jr., New Orleans, La., for Upper Miss. Towing Corp.

Before RIVES, BELL and DYER, Circuit Judges.

DYER, Circuit Judge:

We are concerned in this appeal with who should bear the cost of Dow Chemical's mooring facility which was replaced after being struck on two separate occasions by breakaway drifting barges. The District Court found the wharfinger, Cargo Carriers, Inc., negligent in connection with the breakaway of Barge BC-598 on March 28, 1964, but further found that an efficient intervening cause of the barge's collision with Dow's dolphin was the negligence of the tug Skipjack, owned and operated by Two Twenty-Eight Terminal Services, Inc., an independent contractor, upon whom liability was cast. The District Court found Cargo Carriers, Inc., negligent and liable in connection with the breakaway of Barge UM-23B on December 30, 1964, and its collision with the dolphin. The owners and operators of the barges involved in each of the two casualties were exonerated and they recovered from Cargo Carriers, Inc. reasonable costs and attorneys' fees expended by them in defending this suit. All parties except the barge owners appeal. We affirm.

In the afternoon of March 27, 1964, the Barge BC-598 owned by Bartlett and Company, Grain, and operated by Missouri River Barge Lines, Inc., was placed in the public barge fleet owned and operated by Cargo Carriers in its barge terminal in the Mississippi River at Baton Rouge, Louisiana. About ten thirty that night twelve dumb barges, including the Barge BC-598, broke out of the fleet as a result of some turbulence in the river. The tug, Marion M, under charter to Cargo Carriers, and charged with the responsibility for tending the fleet,

radioed the tug Skipjack, owned and operated by Two Twenty-Eight Terminal Services, Inc., for assistance in retrieving the breakaway barges. The Skipjack found seven of the drifting barges, including the Barge BC-598.

When the Barge BC-598 and another barge known as the GB-1 were captured by the Skipjack about 1:05 A.M. on March 28, 1964, they were pushed ashore, shackled together and tied to a willow tree on the bank of the river with a single line from the tree to one end of one of the barges.

Subsequently, Barge BC-598 was seen drifting down river and at about 7:00 A.M., March 28, 1964, it collided with the Dow dolphin. Substantial damage to the dolphin was caused by this collision.

On December 30, 1964, before any repairs to Dow's dolphin were accomplished, Barge UM-23B, owned by Upper Mississippi Towing Corporation, broke away from Cargo Carriers fleeting area, drifted down the river and collided with the same Dow dolphin. Additional substantial damage was done to the dolphin and it was subsequently removed and replaced.

Dow then brought this suit against the Barges BC-598 and UM-23B in rem, and their respective owners in personam. Also named as respondents were Cargo Carriers and Two Twenty-Eight and its tug, Skipjack, and Two Twenty-Eight's insurer.

### The First Casualty

The District Court allocated $22,300 damages to the casualty of March 28, 1964, and judgment for this amount was entered against Two Twenty-Eight Terminal Services, Inc. Dow contends that Cargo Carriers is solidarily liable with Two Twenty-Eight for this damage because Cargo Carriers knew that the barge was negligently tied to a tree after its capture. This contention gives us little pause. The District Court found that the Skipjack never advised the Marion M or Cargo Carriers that the BC-598 was inadequately moored. The record fully supports this finding.

Two Twenty-Eight attempts to avoid liability on two grounds: First it urges that it was engaged in a salvage operation when it captured the BC-598 and moored it to a tree on the bank. It denies that the barge was inadequately moored but, in any event, it argues that there was no proof that it, as a salvor, was guilty of willful or gross negligence, and that it therefore could not be cast in judgment. Two Twenty-Eight further asserts that the trial court was in error in failing to sustain its defense of laches.

The captain of the Skipjack testified that the barges BC-598 and GB-1 were tied with a single line to a willow tree in such a fashion that a disturbance, "such as that caused by a passing ship" would definitely have caused the barges to break loose. This evidence was uncontradicted. The District Court had no alternative but to find that such an inadequate mooring was an act of negligence.

The question is whether Two Twenty-Eight was a salvor and, therefore, not liable except for gross or willful negligence. Subsequent to March 28, 1964, Two Twenty-Eight submitted an invoice to Cargo Carriers for the Skipjack's hire calculated at the rate of $20.00 per hour, and this bill was paid. Two Twenty-Eight's lien for picking up the barges and tying them off on the shore started from the time the Skipjack left the dock. When there are breakaway barges the objective of one rendering assistance (Two Twenty-Eight) is to stop them before they get further down the river, because of the substantial expense to the owner in returning them. They are normally, and were in this instance, shoved onto the bank and tied up and then returned later.

Under the circumstances here present we find it difficult, if not impossible, to believe that the parties contemplated that Two Twenty-Eight was going to render voluntary assistance to save the breakaway barges from impending peril and claim remuneration for salvage services. We agree with the finding of the District Court that, on the occasion in

question, as it appears had been done in the past, Two Twenty-Eight was hired to render assistance in recapturing the barges quickly and thus ameliorate the towing expense that Cargo Carriers would be put to in bringing the breakaway barges back from down river to the Terminal. We therefore think it unlikely that Two Twenty-Eight was acting as a salvor. But even assuming a salvage situation, it does not extricate Two Twenty-Eight from the consequences of its negligent mooring of Barge BC-598.

Relying on The Noah's Ark v. Bentley and Felton Corporation, 5 Cir. 1961, 292 F.2d 437, Two Twenty-Eight contends that there was non-distinguishable damage here (the same type of damage which would have been sustained had not the salvage efforts taken place) and therefore there was no liability because there was no showing of willful or gross negligence. This reads *Noah's Ark* too broadly. *Noah's Ark* was concerned with damages to the salvaged vessel itself. Furthermore, there whether the damages were distinguishable or non-distinguishable could be readily ascertained. Here we are concerned with damage sustained by a third party and whether it would have even occurred had Two Twenty-Eight not interrupted the barges' breakaway journey is pure speculation. More importantly, however, Two Twenty-Eight's negligence was not for ineffectual salvage but for failure to place the salvaged barge in a safe mooring. As Chief Judge Brown said in *Noah's Ark*:

> Here there is no effort to hold the Cudjoe [Skipjack] liable for ineffectual salvage. On the contrary, this was performed and performed well. The disabled Noah's Ark [BC-598] was brought safely to the port of refuge. The Cudjoe [Skipjack] is not pursued because had she taken this rather than that particular course of action the Noah's Ark would have been rescued [the BC-598 would not have collided with the dolphin]. To the contrary, she is cast because having performed salvage diligently and successfully, she failed to exercise ordinary care for the

property then in her actual control. *Id.* at 441.

We conclude that Two Twenty-Eight was under a duty to properly and securely moor the Barge BC-598 and its failure to do so constituted negligence making Two Twenty-Eight liable to Dow.

Finally, Two Twenty-Eight asserts error because the District Court failed to sustain the defense of laches. Dow's original libel, which did not make Two Twenty-Eight a party, was filed March 24, 1965. On January 11, 1967, Cargo Carriers filed a third party complaint against Two Twenty-Eight and the Skipjack, asserting negligence in the mooring of the BC-598. Dow then amended its libel to assert its claim against Two Twenty-Eight and its insurer.

Two Twenty-Eight argues that there was no excuse for Dow's delay in proceeding against Two Twenty-Eight because Dow knew that the BC-598 had originally been moored by Cargo Carriers and that an inquiry would have disclosed that the barge had been tied off by the Skipjack. Two Twenty-Eight complains that it was not afforded an opportunity to have the damaged dolphin examined by its own experts, and that it was also hampered in preparing for trial because the captain of the Marion M was killed prior to trial.

 Laches is inexcusable delay in instituting the action plus prejudice to the libeled party as a result of the delay. Gardner v. Panama R. Co., 1951, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31; Byrd v. The M/V Yozgat, 5 Cir., 1969, 420 F.2d 954; Phillips v. Springfield Insurance Co., 5 Cir. 1969, 418 F.2d 236; Molnar v. Gulfcoast Transit Co., 5 Cir. 1967, 371 F.2d 639; Akers v. State Marine Lines, Inc., 5 Cir. 1965, 344 F.2d 217. We find neither of the essential elements of laches present here. Dow did not know and had no way of learning of the involvement of Two Twenty-Eight and the Skipjack until the court held a pretrial conference. They were promptly joined as respondents. It appears that although Dow propounded interrogator-

ies to Cargo Carriers which could have developed information concerning Two Twenty-Eight, the answers, in fact, revealed nothing. Furthermore, although Two Twenty-Eight raised the defense of laches in its answer, no pretrial issue was made and no evidence was offered at the time of trial. Thus, Two Twenty-Eight failed to meet its burden of showing prejudice.

### The Second Casualty.

The District Court allocated damages in the amount of $13,128 to the casualty of December 30, 1964, and judgment for this amount was entered against Cargo Carriers, Inc.

■ Again, Dow seeks judgment against more than one party, this time claiming that the Barge UM-23B should be liable in rem. However, no process in rem ever issued against the barge and it was not arrested. Attachment subjecting the res to the jurisdiction of the court is a prerequisite to a finding of in rem liability. Lewis v. Maritime Overseas Corporation, D.Or.1958, 163 F. Supp. 453; 1 Benedict on Admiralty § 11 at p. 20; see Ex Parte Republic of Peru, 1943, 318 U.S. 578, at 587, 63 S.Ct. 793, 87 L.Ed. 1014; The Resolute, 1897, 168 U.S. 437, at 439, 18 S.Ct. 112, 42 L.Ed. 533.

■■ Cargo Carriers, with some ennui, faults the District Court for failing to find that the replacement of Dow's dolphin was necessitated solely by the damage which was caused by the first collision of March 28, 1964. It argues that "the preponderance of the testimony" supports Cargo Carriers' position, although admitting that the evidence con-

cerning damage attributable to the two casualties "is not exceedingly clear." Cargo Carriers seems to suggest that we equate evidence that is "not exceedingly clear" with a "clearly erroneous" finding. Of course this will not do. The allocation of damages resulting from two collisions was a fact finding made by the trial court on disputed evidence which was not only not clearly erroneous, McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, but was supported by substantial evidence.

### Indemnity for Costs and Attorneys' Fees

Cargo Carriers poses one further question for our consideration. It insists that the District Court erred in awarding the owners and operators of the breakaway barges reasonable attorneys' fees and costs expended by them in successfully defending the libel brought against them by Dow.

■ As a wharfinger, Cargo Carriers was not an insurer of the barges BC-598 and UM-22B entrusted to its care; it was, however, a bailee for hire and was required to see to it that the barges were adequately moored at all times. John I. Hay Co. v. The Allen B. Wood, E.D.La. 1954, 121 F.Supp. 704, aff'd sub nom, Martin Oil Service, Inc. v. John I. Hay Co., 5 Cir. 1955, 219 F.2d 237; Federal Barge Lines, Inc. v. Star Towing Company, Inc., E.D.La.1967, 263 F.Supp. 981. The owners and operators surrendered the custody and control of their barges to Cargo Carriers relying on its expertise as a wharfinger. Cargo Carriers breached its duty under the contract by negligently allowing the barges to go adrift and damage Dow's dolphin.[1]

---

1. As to the Barge BC-598, Cargo Carriers argues that it breached no duty and attempts to persuade us that the initial breakaway of the barge from its fleeting area did not result from its negligence, but from unanticipated turbulence which was caused by a seismic wave. The District Court made a flat finding that the breakaway was not caused by a tidal wave from an earthquake. Five other barges broke loose from the same fleeting area on the afternoon of March 27, 1964, admittedly long before the high water allegedly occurred that night. Of some significance also is the fact that no barges broke away from the adjacent Two Twenty-Eight Terminal. From some conflict in the evidence the court characterized the turbulence as nothing more than that which is created by a ship going

**312**

The rationale of the decisions granting indemnity in situations involving maritime contractors is that the contractor's expertise and control and supervision of the operation being performed make it the party best situated to prevent accidents. Tebbs v. Baker-Whiteley Towing Co., 4 Cir. 1969, 407 F.2d 1055. Therefore, we agree with the District Court that Cargo Carriers should indemnify Bartlett, Missouri, and Mississippi Towing for their costs and reasonable attorneys' fees in successfully defending the claims asserted against them by Dow. *See* Singer v. Dorr, E.D.La.1967, 272 F.Supp. 931.

The judgment of the District Court is Affirmed.

down the river. We are unable to say, upon a careful review of the record, that the findings by the District Court are clearly erroneous. McAllister v. United States, *supra*.