520 F.2d 556
 Jim F. SIMS, Plaintiff,
Tomlinson Fleet Corporation, a corporation,
Cross-Plaintiff-Defendant-Appellee,
v.
The CHESAPEAKE AND OHIO RAILWAY COMPANY, a Virginia
Corporation, Cross-Defendant-Appellant.
 No. 74-2205.
 United States Court of Appeals,
Sixth Circuit.
 July 25, 1975.
 
 Robert A. Straub, Southfield, Mich., for cross-defendant-appellant.
 John T. Jaeger, Johnson, Branand & Jaeger, Cleveland, Ohio, John A. Hamilton, Foster, Meadows & Ballard, Detroit, Mich., for cross-plaintiff-defendant-appellee.
 Before EDWARDS, McCREE and LIVELY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 This case concerns the right of a shipowner to recover by way of indemnity from a wharfinger the attorneys fees and other costs of litigation incurred by the shipowner in defending an action by a crew member against the shipowner and the wharfinger for personal injuries suffered in a fall on property subject to the control of the wharfinger. The plaintiff Sims was a member of the crew of the Sylvania, owned by Tomlinson. He was returning to the Sylvania from shore leave by driving over a road which led through the marshaling area of the C & O yard at Toledo, Ohio adjacent to Slip No. 2 where the Sylvania was berthed. He alighted from his automobile to inspect a tire which had gone flat and, in doing so, stepped into a hole which was partly filled with ice and slush, suffering an injury to his ankle. Sims was not about the ship's business at the time of the accident and testified that it occurred approximately 1400 feet from the head of Slip No. 2 and 2500 feet from the bow of the Sylvania.
 
 
 2
 In his complaint and amended complaint, Sims sought recovery against his employer Tomlinson on three causes of action: (1) negligence under the Jones Act, 46 U.S.C. § 688, consisting of the failure to furnish the plaintiff a safe place to work, failure to furnish a safe means of ingress and egress and failure to warn of the dangerous condition of the dock; (2) under the general maritime and admiralty law of the United States for failure to furnish the plaintiff a seaworthy vessel; and (3) for maintenance and cure. As to C & O the plaintiff claimed under the general admiralty and maritime law in addition to alleging diversity of citizenship and the right to recover under the common law; charging that the injury was caused solely by the negligence of C & O in (a) allowing debris to accumulate on its dock; (b) failing to inspect and clean the dock area; and (c) failing to warn the plaintiff of the dangerous condition of the dock area. The complaint stated that there was an agreement between Tomlinson and C & O for use of the dock and that both defendants knew that the plaintiff and other seamen would be using the area as a means of ingress and egress to the Sylvania and other vessels moored at the C & O docks.
 
 
 3
 In its answer, Tomlinson stated that the claim for maintenance and cure had been paid, denied any liability on its part and pled as affirmative defenses contributory negligence and assumption of risk by the plaintiff and that the plaintiff's injuries were caused solely by the negligence of C & O. Tomlinson also filed a cross-claim against C & O stating that the maintenance and care of the dock at which the Sylvania was moored was under the exclusive control of C & O and that plaintiff's claim for damages is one for which C & O impliedly agreed to assume responsibility and indemnify Tomlinson. The cross-claim further charged that C & O warranted the safe condition of the dock and agreed to pay Tomlinson any damages and indemnify and save Tomlinson harmless from all liability to third persons from breach of this warranty. The prayer for relief in the cross-claim extended to reasonable attorneys fees, costs and expenses of litigation in addition to any damages for which Tomlinson might be found liable to the plaintiff. In its answer to the cross-claim, C & O denied that any agreement or warranty existed between it and Tomlinson and denied negligence on its part.
 
 
 4
 The case was tried before a jury which received general instructions and special interrogatories and was furnished a number of forms of verdict which provided alternative findings on the various claims presented by the pleadings and proof. The forms which were signed by the foreman resulted in a verdict in favor of the plaintiff Sims against C & O, and for the defendant Tomlinson on the claim of the plaintiff Sims. The jury answered "No" to the question of whether Sims was contributorily negligent. The issue raised by the cross-claim was submitted to the jury only if it found in favor of Sims against Tomlinson. Since the jury did not so find, no verdict was received on this issue. However, the court, in addition to entering judgment for Sims against C & O and dismissing the plaintiff's claim against Tomlinson, entered judgment for Tomlinson against the C & O on its cross-claim with respect to maintenance and cure "and for all attorneys fees, costs, expenses and disbursements in connection with this action."
 
 
 5
 The judgment of Sims against C & O has been satisfied and C & O has indemnified Tomlinson to the extent of the maintenance and cure portion of the judgment. The issue on this appeal is whether the district court correctly granted Tomlinson indemnity against C & O for attorneys fees, costs and litigation expenses on the basis of the jury findings. Several additional facts should be related. There was no written agreement between Tomlinson and C & O requiring C & O to indemnify Tomlinson for a judgment rendered against it under the circumstances of this case or for the payment of attorneys fees and litigation expenses. If such a duty existed it must have been implied from the relationship between the vessel and the wharfinger. A further fact which C & O emphasizes is that Tomlinson never tendered the defense of this action to C & O or demanded that it provide a defense for Tomlinson.
 
 
 6
 C & O contends that in the absence of a contract providing for indemnification, the district court should have relied upon the principles applicable to indemnity in tort as opposed to indemnity based on contract. It cites Fleischmann Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967), where the Court held that "(t)he rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." It is the position of C & O that only when one secondarily liable in a tort action is required to pay damages to the claimant does the person so paying have a right of indemnity "implied in law" to recover such damages from the one primarily liable. See Ohio Casualty Co. v. Ford Motor Co., 502 F.2d 138 (6th Cir. 1974). C & O argues that in the present case, since Tomlinson was exonerated from liability to Sims by the jury, there was no issue of primary-secondary tort liability and, hence, no right of indemnity for attorneys fees and expenses. C & O argues further that Tomlinson was not liable to Sims as a matter of law. This contention is based on a number of cases which have held that when a crew member is injured while away from the ship for purposes of his own, the shipowner is not liable for such injuries caused by conditions beyond the gangway which are not under its control. Bates v. Prudential-Grace Lines, Inc., 375 F.Supp. 774 (W.D.Wash.1972), aff'd, 497 F.2d 900 (9th Cir. 1974); Wheeler v. West India Steamship Co., 103 F.Supp. 631 (S.D.N.Y.1951), aff'd, 205 F.2d 354 (2d Cir. 1953).
 
 
 7
 C & O contends that the present case should be decided under state law relating to tort indemnity rather than a rule of maritime law. In Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), the Supreme Court held that federal maritime law does not apply to accidents suffered by a longshoreman who is injured on the dock by allegedly defective equipment owned and operated by his stevedore employer. The Court held that the gangplank is the dividing line between state and maritime jurisdiction and that with regard to torts federal maritime jurisdiction is determined by the locality of the act and may be invoked only when the act occurs in navigable waters. The Court pointed out that the rule is different with respect to contract matters in which admiralty jurisdiction depends upon the nature of the transaction. It is the position of C & O that since the plaintiff suffered his injuries some 2500 feet from the gangplank the court correctly submitted the issue of liability as to C & O to the jury on common law principles rather than those of admiralty law. Since the primary claim was submitted and decided under the common law of Ohio, C & O maintains that the claim for indemnity should be decided also under the law of Ohio.
 
 
 8
 In Maryland Casualty Co. v. Frederick Co., 142 Ohio St. 605, 53 N.E.2d 795 (1944), the Supreme Court of Ohio held that when a case is tried on the theory that liability for a plaintiff's injuries is primary as to one defendant and secondary as to the other and the "secondary defendant" is held liable to the plaintiff, that defendant may recover by way of indemnity from the "primary defendant" if the primary defendant has been notified of the claim, tendered a defense and advised that it will be required to hold the secondary defendant harmless. In Wiper v. Great Lakes Engineering Works, 340 F.2d 727 (6th Cir. 1965), this court held that an action against the owner of a dock at which a ship was berthed for the death by drowning of a member of the ship's crew allegedly resulting from failure to maintain a safe docking area was governed by the law of Ohio rather than federal maritime law. Since docks and wharves are considered extensions of land, an action for negligently maintaining a dock is governed by state law, "absent a maritime status between the parties." Id. at 730. In Koserkoff v. Chesapeake & Ohio Railway Company, 427 F.2d 1049 (6th Cir. 1970), a case similar on its facts to the present one, the law of Ohio was applied to the claim of a seaman against C & O for injuries suffered on the dock in the immediate vicinity of the ship's ladder. No issue of indemnity was presented in Koserkoff and the trial and submission of the case under the common law of Ohio was not questioned.
 
 
 9
 We think it is clear that the issue of C & O's liability to Sims was tried and submitted as a common law personal injury action governed by the law of Ohio. However, the claims of Sims against Tomlinson were based on their relationship of crewman and shipowner, and the cross-claim of Tomlinson against C & O was based upon their relationship as shipowner and dock owner or wharfinger. Even though C & O's liability to Sims was established under the law of Ohio, the existence of maritime relationships between Sims and Tomlinson and Tomlinson and C & O requires that we consult federal maritime law in disposing of the cross-claim. Since the Supreme Court decision in Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1955), it has been settled that a shipowner may recover as indemnity from a stevedoring contractor those damages which the shipowner has been required to pay a longshoreman employed by the stevedore for injuries suffered aboard ship. This is true even in the absence of an express agreement of indemnity because the "essence" of a stevedoring contract is the stevedore's "warranty of workmanlike service . . . ." Since the stevedore's obligation to repay the shipowner for damages caused by the stevedore's actions is based on a breach of this warranty, "(t)he shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." 350 U.S. at 133-134, 76 S.Ct. at 237. The rule enunciated in Ryan has been extended to include indemnity actions by shipowners against other suppliers of services to ships such as ship repair contractors, Lusich v. Bloomfield Steamship Co., 355 F.2d 770 (5th Cir. 1966); and against shipyards, American Export Lines v. Norfolk Shipbuilding and Dry Dock Corp.,336 F.2d 525 (4th Cir. 1964). In the last cited case, there was a tender of defense by the shipowner to the shipyard which was refused. However, the court did not base its decision on this fact. In that case, the shipyard argued that it alone was responsible for its own negligence and that it was impossible for the ship to have been held liable for the injury to the shipyard employee. The court stated the following rule:
 
 
 10
 The jury having found the shipyard solely at fault for Bielawski's injuries, it is clear that American Export has sustained its burden to prove the shipyard's breach of warranty. It is equally clear that the expenses incurred by the ship in defense of the suit were occasioned by this breach. The only question then is whether the shipyard's breach exposed the ship to "potential" liability. Id. at 527.
 
 
 11
 The court stated that the potential liability of the shipowner must not be determined by examination of the evidence produced at trial, but rather it must be based on the situation as it existed when the suit was begun. Concluding that the pleadings contained a claim of liability by the shipowner which could only be shown not to exist by developing the evidence on trial, the court held that the shipowner was exposed to "potential" liability which it could not reasonably ignore or fail to defend. The court also held that attorneys fees and litigation expenses incurred in the successful defense of the claim by the shipowner were recoverable in indemnity since the shipowner would have been entitled to indemnity if it had lost the case and the court refused to penalize it for its success. See also Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir. 1964).
 
 
 12
 C & O responds that all of the cases applying the Ryan rule concern actions for injuries which occurred aboard ships or in navigable waters. It is maintained that these principles have no application in the absence of a contractual agreement to indemnify in a case where a member of a ships' crew seeks damages for injuries suffered on land. We must first determine whether the relationship between a shipowner and a wharfinger, like those between shipowners and others furnishing services to a ship, includes an implied warranty of workmanlike service which may be the basis of a right to indemnity for fees and expenses. If such an implied warranty of workmanlike performance does exist, then the claim for indemnity is contractual and the district court correctly disregarded the theories of "primary" and "secondary" negligence urged by C & O. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). In Dow Chemical Co. v. Barge UM-23B, 424 F.2d 307 (5th Cir. 1970), a wharfinger was treated as a maritime contractor who was required to indemnify the owner of a barge which broke away and damaged the dock of a third party for its attorneys fees and costs in successfully defending a claim for damages by the owner of the damaged dock. The court stated that
 
 
 13
 The rationale of the decisions granting indemnity in situations involving maritime contractors is that the contractor's expertise and control and supervision of the operation being performed make it the party best situated to prevent accidents. Id. at 312.
 
 
 14
 It is not enough, however, to determine that there is an implied warranty of workmanlike performance which runs from a wharfinger to a shipowner. The nature of the services performed by the wharfinger determines the extent of this warranty. In Dow Chemical Co. v. Barge UM-23B, supra, the court stated: "As a wharfinger, Cargo Carriers was not an insurer of the barges BC-598 and UM-22B (sic) entrusted to its care; it was, however, a bailee for hire and was required to see to it that the barges were adequately moored at all times." 424 F.2d at 311. The implied warranties of a wharfinger relate to the conditions of berths and the removal of dangerous obstructions or giving notice of their existence to vessels about to use the berths. Paragon Oil Co. v. Republic Tankers, S. A., 310 F.2d 169 (2d Cir. 1962), cert. denied sub nom., Yacimientos Petroliferos Fiscales v. Paragon Oil Co., 372 U.S. 967, 83 S.Ct. 1092, 10 L.Ed.2d 130 (1963); See also Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc., 354 F.2d 476 (4th Cir. 1966). A wharfinger also owes a duty to furnish a safe means of egress and ingress to berthed ships. See Bailey v. Texas Co., 47 F.2d 153 (2d Cir. 1931). It is undisputed that C & O furnished a safe way from the ship's ladder along a concrete apron on a sea wall to a parking lot where Sims had earlier parked his car. Although a wharfinger should be held to warrant the safety of its property devoted to use as piers or otherwise required to perform its business as a wharfinger, it should not be held to warrant to ships using its piers the safe condition of all property which it may own in the dock area.
 
 
 15
 In the absence of a breach of an implied warranty, there is no basis for recovery by Tomlinson from C & O of its attorneys fees, court costs and other litigation expenses. Both were named as defendants in the original action. The complaint and amended complaint presented no cause of action common to both defendants. Cf. Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., 444 F.2d 727, 735 (3d Cir. 1971). The district court recognized this by submitting the case against C & O to the jury under the common law of Ohio. The claims against Tomlinson were based on federal maritime law. Each was required to defend against a separate theory of recovery. Tomlinson was successful in denying breach of any duty to is employee, but Sims convinced the jury that C & O had been negligent. The mere fact that there was a maritime relationship between Tomlinson and C & O does not render C & O liable in indemnity for the expenses of Tomlinson's defense. There was no showing that C & O breached any duty, either in tort or contract, owed to Tomlinson.
 
 
 16
 The judgment of the district court is reversed. The case is remanded with directions that the claim for indemnity be dismissed. Costs to C & O.
 
 
 17
 McCREE, Circuit Judge, joined.
 
 
 18
 EDWARDS, Circuit Judge (dissenting).
 
 
 19
 This is an admiralty case involving the Sylvania, a ship owned by Tomlinson Fleet Corporation; Sims, an injured seaman from that ship; and Chesapeake & Ohio Railway, the wharfinger (where that ship was docked) upon whose property and by whose negligent maintenance of its property the seaman was injured. The question in the case, as I see it, is whether or not the District Court was right in holding that the ship may recover from the wharfinger, on the theory of implied warranty, costs and attorney fees it expended in its successful defense of the seaman's Jones Act (46 U.S.C. § 688 (1970)) claim filed and tried at the same time as the seaman's successful common law claim against the wharfinger for damages due to negligent maintenance of the wharfinger's access road from its dock to the public highway. I believe admiralty law requires an affirmative answer and, hence, affirmance of the judgment of the District Court.
 
 
 20
 As I read my colleagues' opinion, I do not find reason to disagree with its view of the law. As I understand it, they hold that admiralty law applies, and that a ship employing a dock has an implied warranty from the wharfinger of reasonably safe access from the dock to the public highway. Bailey v. Texas Co., 47 F.2d 153 (2d Cir. 1931):
 
 
 21
 Coming to the merits, we think that the plaintiff was more than a licensee; he was an "invited person." The ship came alongside the wharf on the defendant's business; she was to lade or discharge the defendant's oil. The crew were as much "invited," as the ship herself, and they would not remain on board all the time she lay there. On the contrary, their business or leisure might take them ashore, and they had no way of reaching the street, except over the wharf. Harvey v. Old Dominion S. S. Co., 299 F. 549 (C.C.A.2); Quinn v. Staten Island R. Transit Co., 224 N.Y. 493, 121 N.E. 340; Swords v. Edgar, 59 N.Y. 28, 17 Am.Rep. 295. Had there been a single path, well indicated, by which they could come and go, probably the defendant's duty would have been limited to making that safe (Pallocco v. Lehigh Valley R. Co., 236 N.Y. 110, 140 N.E. 212), but this was not so. While the defendant was not bound to anticipate that seamen would wander at random about the wharf, it was charged with anticipating that they would choose the most convenient route. Bailey v. Texas Co., supra, at 155.
 
 
 22
 Our differences seem to be that my colleagues view the implied warranty as limited to the dock itself, or perhaps to the dock and some contiguous area of the wharfinger's private property less distant from the ship than 1,400 to 2,500 feet (where the accidental injury actually occurred), or they view the fact that there was an alternate (presumably safer) footpath to the parking lot and thence to the public highway as exempting the wharfinger from its warranty.
 
 
 23
 To me these factual distinctions do not carry decisive weight. It is clear in this record that the seaman was injured on a regularly used, direct automobile route from the public highway to the ship, which route was on the wharfinger's property and was described as a road on one of the wharfinger's maps. There is no evidence that seamen from the ship were warned not to employ this route or that the walkway to the parking lot was exclusive or even preferred.
 
 
 24
 Admiralty law generally casts the burden of injury in a contract relationship of this nature upon the party which could have prevented the injury. Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, 323, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525 (4th Cir. 1964). Here that party is clearly and exclusively the wharfinger. Interestingly enough, the wharfinger also has recognized all of these admiralty principles by conceding indemnification of the ship for the maintenance and cure of the injured seaman, which admiralty law since time immemorial has imposed upon the ship.