**E. I. DUPONT DE NEMOURS AND COMPANY, Plaintiff,**

v.

**RIVERWAY HARBOR SERVICE ST. LOUIS, INC. et al., Defendants.**

No. 78–563A(2).

United States District Court,
E. D. Missouri, E. D.

Dec. 26, 1979.

Harold C. Gaebe, Jr., Thompson, Walther, Shewmaker & Gaebe, St. Louis, Mo., for plaintiff.

Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for defendant Riverway Harbor.

Michael D. O'Keefe, Thompson & Mitchell, St. Louis, Mo., for defendant Commercial Transport and American Commercial Barge.

John S. Sandberg, Shepherd, Sandberg & Phoenix, St. Louis, Mo., for defendant Phillips Petroleum Co.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff E. I. DuPont de Nemours & Company ("DuPont") brought this suit in admiralty against defendants Riverway Harbor Service St. Louis, Inc. ("Riverway"), Commercial Transport Corporation and American Commercial Barge Line Company (collectively "Commercial"), and Phillips Pipeline Company ("Phillips") to recover for damages to its cargo of methanol. Prior to trial, the parties stipulated that plaintiff was entitled to judgment in the amount of one hundred forty-six thousand three hundred ninety-seven dollars ($146,397.00), together with interest from the date of the stipulation and costs.

This case was tried before the Court without a jury to determine which of the defendants were liable for that amount. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being fully advised in the premises hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. DuPont was the owner of approximately 400,000 gallons of methanol (mythol alcohol), which were to be shipped from its facilities in Beaumont, Texas to St. Louis, Missouri.

2. Commercial contracted with DuPont to transport this methanol, and did so via barge CHEM 42. The contract between Commercial and DuPont allowed Commercial to subcontract with other shippers, though Commercial was to remain liable for the negligence of its subcontractors.

3. CHEM 42 arrived in St. Louis on the morning of March 1, 1977 and was delivered to Riverway (formerly Universal Towing), a fleeting and harbor service. It was Riverway's responsibility to handle the barge in the St. Louis area and to deliver it to its ultimate destination. Riverway was advised of the contents, though this knowledge was irrelevant for its purposes.

4. According to the contract between Riverway and Commercial, Riverway agreed to indemnify Commercial for any liability which arose from Riverway's negligence.

5. Riverway was told that CHEM 42 was to be delivered to J. D. Streett. CHEM 42 was carried on Riverway's daily work schedules on a "will advise" basis, meaning that the recipient of the barge would call Riverway to notify Riverway of the exact time and place of intended delivery.

6. Commercial was also the owner of barge CHEM 24. This barge was loaded with natural gasoline and destined for Phillips' facility in St. Louis.

7. CHEM 24 arrived in St. Louis on the morning of March 7, 1977, and was also delivered to Riverway. As with CHEM 42, Riverway was notified of the ultimate destination and the cargo of CHEM 24.

8. Phillips was aware, prior to its arrival, that CHEM 24 was to arrive in St. Louis on March 7, 1977. On that morning, William Henry, an employee of Commercial, called William Gaither, senior terminal supervisor for Phillips, and informed him that CHEM 24 was in St. Louis awaiting delivery.

9. Later that morning Gaither called Gerry Mueller, dispatcher for Riverway, and requested delivery of CHEM 42, although his records indicated that Phillips was to receive CHEM 24. Since his records

at the time also indicated that CHEM 42 was to go to J. D. Streett, and CHEM 24 to Phillips, Mueller questioned Gaither as to whether he did not actually want CHEM 24. Gaither responded that it was CHEM 42 which was to be delivered.

10. It is not uncommon for the destination of a barge to change while awaiting delivery. In such situations, Riverway normally delivers the barge to whomever calls for it, without checking with the owner of the barge. Mueller followed this practice with respect to CHEM 42 and directed that the barge be delivered to Phillips without checking with Commercial.

11. After calling for CHEM 42, Gaither sent a dock unloading report to the dockman/tankerman at Phillips' dock, Jerry Bramel. This report listed the barge which was due to arrive as CHEM 24.

12. When CHEM 42 arrived at Phillips' dock, Bramel called Gaither to tell him of the discrepancy between the barge which arrived and that which was expected. Gaither asked Bramel to sample the cargo to ascertain if it smelled and looked like natural gasoline. Bramel did so and responded that the cargo smelled and looked like natural gasoline.

13. Gaither then directed Bramel to pump the cargo into a storage tank which already contained some base gasoline. The methanol from CHEM 42 was destroyed when it was mixed with the base gasoline.

14. Bramel did not know how to distinguish methanol from natural gasoline by smell or sight, and therefore the test performed was meaningless. Gaither was unaware of whether Bramel could do so or not when he instructed that the test be run.

15. Phillips could have determined that CHEM 42 did not contain natural gasoline with a minimal effort. The barge contained shipping papers on which the cargo was listed. Gaither was not aware of the presence of these papers. A specific gravity test could also have easily been run. Phillips was under no time constraints.

16. There were no warning signs on the barge as to its contents.

17. Commercial engaged an outside tankerman to assist in the unloading. It was not this outside tankerman's responsibility to check the nature of the cargo. Bramel testified that it was entirely his responsibility.

18. Phillips was entirely aware that the barge delivered was not that which was expected. Nonetheless, Phillips unloaded the barge without running adequate tests. Phillips' negligence was the sole cause of the destruction of the methanol.

## CONCLUSIONS OF LAW

This is an admiralty and maritime claim within the meaning of Rule 9(h), Federal Rules of Civil Procedure, and this Court has jurisdiction thereof pursuant to 28 U.S.C. § 1333. The activities which gave rise to the incident in question bear a substantial relationship to traditional maritime activities, and the activities occurred on navigable waters or very close thereto. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

Prior to trial the parties stipulated that plaintiff was entitled to judgment. The issue at bar presently is which defendant must compensate plaintiff for the series of mistakes which led to the destruction of plaintiff's methanol.

■ One point is perfectly clear—Commercial was not negligent in any way. Phillips has argued that Commercial is liable on two grounds, neither of which have any basis in law or fact. Phillips initially argues that the outside tankerman supplied by Commercial was negligent in not ascertaining the contents of CHEM 42. The evidence was undisputed, however, that the responsibility to sample the contents rested solely on Phillips' own employee. The outside tankerman's only duty was to ensure that the pumping was done safely.

■ Phillips next argues that Commercial was negligent in not posting warning

signs on CHEM 42 which would have alerted the tankerman of the contents. This argument is based on a misreading of the applicable federal regulations. Those regulations require that barges carrying subchapter "O" commodities must post warning signs. 46 C.F.R. § 151.45–2(e)(1). It is clear, however, that methanol is a subchapter "D" commodity, not a subchapter "O" commodity. 46 C.F.R. § 30.25–1; 46 C.F.R. § 151.01–10(d). The applicable regulations require that barges containing subchapter "D" commodities carry shipping papers, not post warning signs. There is no dispute that CHEM 42 carried the appropriate shipping papers.

■ Liability is therefore between Phillips and Riverway. The fact that it is customary for the destination of barges to be changed while they await delivery does not mean that Riverway was not negligent if its delivery of CHEM 42 to Phillips without checking with Commercial was not, in fact, reasonable. *Hogge v. S. S. Yorkmar*, 434 F.Supp. 715 (D.Md.1977). This Court must conclude that such a practice is at least slightly negligent. Minimal effort would have been necessary to check with Commercial concerning the change. The consequences of not doing so are obvious in this case.

■ However, this Court must conclude that the consequences in this case resulted from the intervening negligence of Phillips. The mistake made by Riverway was obvious to Phillips. In such a situation, the negligence of Riverway was merely a "condition", not a cause, of the destruction of the methanol. *Chemical Transporter, Inc. v. M. Turecamo, Inc., etc.*, 290 F.2d 496 (2d Cir. 1961); *P. Dougherty Co. v. United States*, 207 F.2d 626 (3rd Cir. 1953). This principle was aptly stated in *Crawford v. Indain Towing Company*, 240 F.2d 308, 311 (5th Cir. 1957):

Whether this be called an application of the doctrine of last clear chance or the rule of causation, makes little difference. Where, as here, an act is negligent, but is not the proximate cause of the injury, it is merely a condition. As such it is not a basis of liability.

*See*, also, *The Mars*, 9 F.2d 183 (S.D.N.Y. 1914).

Phillips, aware of the delivery of the wrong barge, should not have proceeded to pump the contents into a storage tank without ascertaining the nature of the contents. Judgment will therefore be entered against Phillips, and in favor of Commercial and Riverway, on plaintiff's complaint.

■ Commercial and Riverway also seek to recover their attorneys' fees from Phillips. Where, as here, an innocent or passively negligent party is forced to defend a suit due to the active negligence of a third party, that third party is liable to the others for their attorneys' fees in defending the action. *Cotten v. Two "R" Drilling Company, Inc.*, 508 F.2d 669 (5th Cir. 1975); *Dow Chemical Company v. Barge UM–23B*, 424 F.2d 307 (5th Cir. 1970). Commercial and Riverway are therefore entitled to recover their attorneys' fees from Phillips. The parties are directed to agree among themselves as to a reasonable amount for such fees. If no such agreement can be reached, the parties may apply to this Court for a hearing.