**COLUMBIA MARINE SERVICE, INC., Appellant,**

v.

**DRAVO MECHLING CORP., Appellee.**

Civ. No. C-1-83-1095.

United States District Court, S.D. Ohio, W.D.

Jan. 27, 1987.

William Ellis, Cincinnati, Ohio, for appellant.

Michael Eagen, Cincinnati, Ohio, for appellee.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on appeal from a decision of the United States Magistrate, pursuant to 28 U.S.C. section 636(c)(4). Trial before the United States Magistrate was held on September 19–20, 1985. Pursuant to 28 U.S.C. section 636(b)(4), (c)(1) and the consent of the parties, the United States Magistrate was authorized to enter final judgment in this case (doc. 12). The parties have filed memoranda in this Court and in addition were heard by oral argument on January 23, 1987.

The sole issue involves allocation, if any, of fault between the two defendants, Columbia Marine Service, Inc. (Columbia), plaintiff on the cross-claim, and Dravo Mechling Corporation (Dravo), for damages which resulted when a fleet of barges moored at Columbia's facility broke loose on January 25, 1982, and caused damage. The Magistrate found Columbia 100 percent negligent and Dravo zero percent negligent. (Doc. 53).

The scope of review of a magistrate's findings is limited to the "clearly erroneous" standard provided by F.R.Civ.P. 53. *Brown v. Wesley's Quaker Maid,* 771 F.2d 952, 956 (6th Cir., 1985; *en banc,* District Judge Bertelsman sitting by designation). Under the Law of Admiralty comparative negligence must be determined. The original action resulted in a settlement of claims in the sum of $107,166.08.

The essential facts are not in dispute. Appellant Columbia operated Southern Harbor at mile 473.2 on the left descending (southerly) bank of the Ohio River in Ludlow, Kentucky. Columbia's service included Kentucky # 3 Fleet (KY # 3), which was located at mile 473.3 of the Ohio River approximately three hundred feet down-

stream from Southern Harbor. At the time of the accident the fleet consisted of nine loaded customer barges and a small deck flat known as the TM–2. In addition to the KY # 3 fleet, a tow of ten loaded barges (the Dravo tow) had likewise been tied up at Southern Harbor for approximately nine hours.

At approximately 2:00 a.m. on January 25, 1982, the M/V Daniel Webster (the DW), a towboat owned and operated by appellee Dravo Mechling Corporation, and the Dravo tow departed the KY # 3 fleet. Shortly thereafter, the remaining nine moored barges broke away and drifted downriver where they caused damage to plaintiffs' property.

Appellant contests the Magistrate's Findings of Fact Nos. 19 and 20, and Conlusions of Law Nos. 5, 6, 7, 8, 9 and 10. For the reasons below, the Court holds that the Magistrate's decision is substantiated by both the evidence and by the law.

Appellant contends the Magistrate incorrectly determined the proximate cause of the damages suffered by plaintiffs. Appellant argues that the evidence proved the cause of the accident to be the negligence of the Dravo vessel, the M/V Daniel Webster. (Doc. 59, p. 15). Appellant maintains the evidence established that the M/V Daniel Webster used excessive power in leaving the fleeter and caused the fleet to break out. (Doc. 59, p. 4). Appellant also contends the Magistrate erred in Conclusions Nos. 9 and 10 by finding Columbia breached its duty of care and is 100 percent negligent. (Doc. 59, p. 15).

## A.  MAGISTRATE FINDINGS OF FACT

This Court must review a magistrate's findings by the "clearly erroneous" standard. *Brown,* 771 F.2d at 956. In admiralty, as in civil cases, such factual findings must be affirmed unless they are clearly erroneous. *Inland Tugs Co. v. Ohio River Co.,* 709 F.2d 1065 (6th Cir.1983). This Court is mindful of the admonition by the United States Court of Appeals for the Sixth Circuit regarding the obligation of a reviewing court to recognize the trier of fact's special expertise.

We have recently been admonished by the Supreme Court to pay more deference to the factual findings of judicial officers who have heard the evidence rather than having merely received a cold record.

*Brown,* 771 F.2d at 956, citing *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

This Court has before it only a "cold record," as the appellate court in *Brown* describes it, containing much evidence about a 2:00 a.m. river accident. A reviewing court cannot substitute its interpretation of the evidence for that of the trial court simply because it "might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the District Court trial court apparently deemed innocent." *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 857–58, 102 S.Ct. 2182, 2190, 72 L.Ed.2d 606 (1982), citing *United States v. National Association of Real Estate Boards,* 339 U.S. 485, 495, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950).

It is only if, after reviewing the entire evidence, the reviewing court was left with the "definite and firm conviction that a mistake has been committed" that the findings should be reopened. *Inwood,* 456 U.S. at 855, 102 S.Ct. at 2189, citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). The Court finds no such mistake in this case.

Since the district court's decision was based on its evaluation of all of the voluminous evidence, the appellant, by extracting selective portions of the record, has not meet the strict burden requisite to overturn the decision below. *Inland Tugs Co. v. Ohio River Co.,* 709 F.2d 1065 (6th Cir. 1983).

## B.  MAGISTRATE CONCLUSIONS OF LAW

### 1.  *The Maritime Law Presumption*

■ In Conclusion No. 2 the magistrate found that the law presumes a fleet breakaway results from the negligence of the

fleeter (Columbia) (Doc. 53). The fleeter can rebut the presumption by showing either: (1) the fleeter used due care under the circumstances or (2) the breakaway was the result of the negligence of a third party, which in this case would be appellee Dravo. (Doc. 53, Uncontested Conclusion of Law No. 3).

The Magistrate concluded the appellant breached its duty of due care at the time of the departure of the M/V Daniel Webster on January 25, 1982. (Doc. 53, Conclusion No. 9).

■ The Magistrate found that appellant Columbia breached its duty of care because of the inaction of the fleeter's chief dispatcher, Mr. Neal Ahern. In Conclusion No. 9 the Magistrate explains:

> Mr. Ahern testified that he had five years' experience as a dispatcher and observer and that he was alarmed because he believed the DW used too much power in departing. Yet he failed to take any action whatsoever until he received a radio message twenty-five minutes later that the fleet had broken loose. While the testimony indicated that in normal circumstances the dispatcher did not ask his own tug to stand by, it seems that if the dispatcher was alarmed by the rate of speed of a departing vessel, he should, at the least, radio his nearby tug to stand by. Further, by not investigating, Columbia, through Mr. Ahern, disregarded the rule that a warfinger, in this case Columbia, is a bailee for hire and has a duty to see that all barges at its facility are adequately moored at all times.

This Court cannot conclude from the record that the Magistrate's erred in deciding Columbia's duty of care. By appellee's admission, a fleeter, as a bailee for hire, has a substantial duty of care, (appellant's doc. 59, p. 15), and the Magistrate did not err by finding this bailee fell short of its duty to see that all barges at its facility were adequately moored at all times. *Sims v. Chesapeake and Ohio Railway Co.*, 520 F.2d 556, 561 (6th Cir.1975).

■ As its second ground for rebutting the presumption, the Appellant contends the M/V Daniel Webster negligently caused the fleet to break away because the vessel allegedly used excessive power to pull out of the dead water fleet, and this excessive power caused the fleet to be pulled or sucked up river and outward introducing slack in the headwire of the fleet. (Doc. 59, p. 4).

The Magistrate, however, found the evidence failed to establish such negligence. The Magistrate noted the only testimony that indicated Dravo's vessel might have used excessive power was that of Columbia's dispatcher, Mr. Ahern, who testified the noise on this particular occasion led him to believe the Daniel Webster pulled out faster than normal. (Doc. 53, Conclusion 7, p. 13). Yet Mr. Ahern made no investigation nor took any action. *Id.* In Conclusion No. 8 the Magistrate explained:

> Based on the testimony at trial and the demeanor of the witnesses, this Court concludes that Captain Wright [pilot of Dravo's vessel) and his crew did not fail to practice good seamanship in departing the KY #3 on January 25, 1982.
>
> ... [W]e find as a matter of law that there is no basis upon which a finding of negligence can be made against Dravo. Not only did Dravo's witnesses state that the vessel's departure was not unusual, but Columbia's witnesses did not appear to be alarmed at its departure. Mr. Bishop, on several occasions, testified that a vessel of that size would cause some disturbance in departing a fleet. An operator of a fleet must certainly anticipate the movement of vessels in the fleeting area, as that is the purpose for which the fleet exists. *See New Orleans Steamboat Co. v. M/V [M/T] Hellesport Glory*, 562 F.Supp. 391, 393 (E.D.La.1983).
>
> It seems clear that Captain Wright believed the fleet was secure when he departed. He maneuvered the tug and barges as he had always done, taking into consideration the swift current and the river stage. The captain would have a duty to call for assistance only if he knew his vessel had broken the fleet loose.

[D]ue diligence is essentially a negligence concept and determinations of negligence in admiralty cases are findings of fact which will be given application unless clearly erroneous. *Hasbro Industries, Inc., v. M/S St. Constantine*, 705 F.2d 339, 341 (8th Cir.1983). The Magistrate's decision on due care was not clearly erroneous.

2. *The Magistrate correctly applied the law regarding Columbia's duty to observe a departing vessel's effect on a fleet.*

 Appellant also contends the Magistrate erred by placing the burden on the Columbia dispatcher, Mr. Ahern, to investigate the effect of Dravo's vessel, the M/V Daniel Webster, upon the fleeter. (Doc. 59, p. 15). Appellant maintains the departing vessel, the M/V Daniel Webster, was in the best position to observe the vessel's effect on the fleeter at the time of departure. (Doc. 59, p. 16).

Appellant also challenges Conclusion No. 8, which states that in this accident, the captain of the M/V Daniel Webster only had a duty to call for assistance if he knew his vessel had broken the fleet loose.

Appellant submits that the Magistrate's decision places "no obligation whatsoever" of due care upon Dravo's vessel, the M/V Daniel Webster. (Doc. 59, p. 14). Appellant misinterprets the Magistrate's decision. The Magistrate did not absolve Dravo of all duty of care. Rather, the Magistrate found that that Captain Wright, pilot of the Dravo vessel, met his duty of care as he did not fail to practice good seamanship in departing the KY. # 3 fleet. (Doc. 53, Conclusion No. 8).

Appellant attempts to minimize the duty of care a bailee such as the Columbia undertakes. *Sims*, 520 F.2d at 561. Appellant's own expert, Mr. David E. Hammond, testified that dispatcher Ahern could have observed any problem that arose, had appellant Columbia installed a spotlight near the fleet, and the cost of such a spotlight would be little more than one hundred dollars ($100.00.) (Doc. 53, Finding 19).

The Magistrate's factual findings are not clearly erroneous, and he did not err as a matter of law.

Accordingly, the judgment of the Magistrate is hereby AFFIRMED.

IT IS SO ORDERED.